Okay, we'll move to our fourth case of the morning, No. 21-1512, Finite Resources, and others v. DTE Methane Resources, et al. Thank you, Your Honors. Yeah, good morning, Mr. Illingworth. When you're ready, you may proceed. Thank you. My name is Will Illingworth. I represent the plaintiff appellants. We commonly call them the Finite Group. This case involves the production of coal mine methane gas from a coal mine void. The easiest way for me to think about this is just to use an example, and let's say this room. It's a void space. It's where a coal mine existed. It was a room and pillar mine, and after the coal seam was mined, there's a space left. My clients controlled 90.9% of the coal mine, and the defendants controlled 9.1%. So my clients controlled, let's say, 90% of this room, and then the defendants controlled 10. They drilled a well in that 10%, let's say it's over here by the door. And what they did is drilled that well so it would communicate with the entire void. Yeah, can I ask you a question? I understand the facts just fine. You all have briefed it up just fine that way. Throughout your briefing, what you seem to emphasize is the receipt of this permit, right, to operate the vacuum, not eliminating your, how do you say that, correlative rights in the Orient 1 rights space that way. When you're, at that level of generality, I agree with you, okay? But what's the best authority you have, because I think you've got to go a step further, to show that the defendant's exercise of the right to capture, of its right to capture violates your rights, or your client's rights? Yes, Your Honor. There was a permit issued for the vacuum. That permit was issued about a month after operations on the vacuum had already existed. So there was a period of time where it was not legally permitted. Now, whenever you get a permit from the state, the state doesn't do some big examination of correlative rights. They just look and check the boxes, you know, if you provided the location, did you provide the notice, et cetera, that they sign off on it. What I would say is how we should look at this is more like a secondary recovery case, okay? And secondary recovery case in Illinois is, let's say, you initially drill a well, and you get what's called the primary production from that well, which is the pressure and pushes everything to that well. Well, afterwards, you do secondary recovery. You may inject water, chemicals, carbon dioxide, gas, et cetera. And what the idea is, let's take this room example again, you have one well, which is your injection well, and your production well is going to be over on the other side. So you insert and enhance this production after the primary production by pushing, injecting water, our gas, et cetera, to push the oil and gas from that well over here. Now, if you cross ownership lines, there's liability there, and there's a couple of cases in Illinois we cite for that, where if you're taking one person's oil and gas and you're moving it someplace else, then you're opening yourself up for liability. This gas is all in the same common space, though, right? Correct. Yeah. And what we would assert is a vacuum is not pushing the oil and gas, but it's pulling it. So it's the same thing. And in Illinois, they should have some liability for that. Now when you do, let's say you're going to do the secondary recovery in Illinois, you have to do what's called unitization proceedings. And the unitization proceedings, one of the requirements is, one, it has to be economical, and there's all kinds of different requirements, but that one's important here because there'll be some argument that my client should have produced it. But regardless, one of the other requirements is, and the main one I want to focus on, is everybody inside that reservoir has to be made a party to that. And the reason for that is because you're pushing oil and gas all around this reservoir, everybody inside the reservoir that owns an interest should be able to have some allocated part of the revenue from that, no matter where it's produced. Mr. Ellingworth, did Continental decide these issues? Continental, your honor, I would look at Continental as more of a coal bed methane case and a decision as to who owns the coal bed methane. Coal bed methane is trapped inside a coal seam. There was a period of time where parties were drilling wells into coal bed or coal seams and then fracking it and trying to release the coal bed methane gas. So this was a big, hot issue at one point. What difference does that make here, which I think is what's argued in the red brief, is it makes no difference. I think that decision was who owns the coal bed methane, the gas owner or the coal owner. Here I'm talking about a void space, and what I'm talking about is intent or on purpose moving the gas from one spot that's controlled by one party over to another spot that's owned by another party, and also that there's a vacuum pump. Is your position, though, do you acknowledge that your adversary had a right of capture? Excuse me, your honor? Do you acknowledge that your adversary holds a right of capture? We're not trying to eliminate the right of capture, your honor. Okay, and so is it the operation, and I think I took this away from your reply brief. It's what you call like an artificial simulation device, right? It's the use of that vacuum that so troubles your client? Correct. It's like the secondary recovery where they're introducing this enhanced recovery on a field, and in this case a void space. So what legal, the permit's lawful, right? You're not here arguing that the issuance of the permit was illegal. No, your honor. Okay. So they got the, and is the issuance of a permit like this, is that a matter of public record? Yes, your honor. Okay. Wait, wait, wait, wait. I thought you did allege in your blue brief that there may have been some illegal shenanigans with DTE getting the permit. Your honor, we assert that they placed us well in a position where they wouldn't have to provide notice to my client, and we assert that they put this well in a place where my client wouldn't see it. And while all this production was going on, they were in negotiations with my client while they were producing the gas, which he controlled, they were in negotiations to try to lease that from him. So there was an illegality issue you were asking the district court to look at and to take into account? Not necessarily, your honor, no. Okay. What, the question I have is, what legal obligation do you believe, I'll just call them DTE, okay? That DTE was under, what do you believe they should have done that they were legally obligated to do and when? As far as? As far as, so getting the permit doesn't seem to be a problem, right? At least that's not before us here, the permit, they have the permit. Yes, your honor. Okay. Were they obligated under, you know, the secondary recovery line of cases or anything else to provide you notice? I don't think so, your honor. There's nothing in the... Okay, so where did they go wrong? By inserting a vacuum and producing my client's gas. Even though there was a lawful permit issued and presumably the regulatory authorities were aware that the vacuum would be used for the extraction of the methane gas? They don't go into that much detail when issuing a permit, your honor. They're more interested with the construction of the well. But they don't think, it's not a vacuum to, you know, sweep the streets. No, and they don't even look at who else owns, you check a box when you do your permit, do you own the right to... For gas extraction, right? Correct. Is your problem that they have captured this gas or that they've captured this gas and not allowed your client to share in the profits? Both. Both. And in all of that, you're proceeding under the doctrine of correlative rights? For this claim. Correct, your honor. And in this situation where it's a mine void, which is open like this, with a vacuum pump, we feel that this is more akin to secondary recovery operations. And the way I can explain it, and we're going to talk about self-help, I'm sure that they're going to say that the right to capture, the reason it's there is because as an operator of an adjoining lease, you have the right to self-help. And you can just drill your own well. Well, the problem with that is when you're in a void space, now just take this room again and just fill it up with sand, fill it up with rock, fill it up with coal. Imagine how long it takes for a gas to get from one end to the other end when it's like this versus when it's full of rock. In this particular situation, because it's a void, we don't have the right to self-help. We don't have the right to drill our own well. Well, we have that right, but by the time we get around to it, the gas is so rapidly depleted because of the vacuum, it's already gone. Now, my client did have a well, and they had it in this mine, but they didn't even know that this gas was being depleted. Furthermore, it would take, by the time they got around to putting the compressor station in the pipelines and making it so it could be commercially productive, it's too late. The right to self-help doesn't exist in this situation. Okay. Thank you, Mr. Linnerth. We understand your position. We'll hear, is it Mr. Rhine first? Good morning. My name is John Rhine, and I represent Keyrock Energy, one of the defendants in this case. We are the current operator of the Orient Mine. I want to correct a few things. I won't go too much into the facts, but the analogy that Mr. Illingworth made, that this big room, and you drill a well on one side, and it draws from the other side, is not in the record, and in fact, it's not true. A coal mine, this mine was started in 1913, ran for 50 years. It consists of many rooms. In fact, this coal mine has hundreds of rooms. That's why they call it the room and pillar mining method. And when you're done with one room or one section of the mine, you seal it off so that the gas, this gas is accumulating at all times. We all know about gas in a coal mine. That's why they had canaries. You seal that room off. You go on for decades doing this. So to say that you own one part of the mine and that the gas comes from that part is not necessarily true. The fact is we don't know where it comes from. The integrity of those seals is unknown. Much of the mine floods, and the gas can't get through it. You have roof falls, land heaves, things that make a big difference when it comes to withdrawing gas from that mine. So first thing I want to do is say the analogy is correct. Secondly, the state does determine correlative rights if you apply for a vacuum permit. Under the section which we cited in our brief, it says specifically that they can't issue the permit until they determine that correlative rights are protected. Now the question really is here, what are the correlative rights? As Mr. Ellingworth said, you can go and do it yourself. Nothing is preventing them from doing this. Nothing is preventing them from installing a vacuum. Vacuum pumps have been used in Illinois for over a century, as we cited technical articles in our brief. And they're heavily regulated by the Illinois Department of Natural Resources, just like tank batteries, flow lines, all the aspects of it are regulated. So really, that's just not true. This is not a secondary recovery case. It's a primary case. Two cases he cites are where in the tri-oil case, it's where the defendant actually went on plaintiff's property and injected a waste product into his oil-producing sands formation. In the Ramsey-Carter case, the 47 case, that was between the landowner and his own lessee. His lessee wanted to convert a producing well into an injection well. And he said, no, I want my oil. Tri-oil, not tri-color. I'm sorry, did I say tri-oil? No, I said tri-color. It's tri-oil, right? Tri-oil seemed to me to be almost a form of trespass, like a form of invasion. I would agree. Neither of those cases involved drawing oil from someone else's property, if indeed that can be proven. Again, it's a fiction that that can ever be proven. We're hundreds of feet underground. No one knows where it comes from. That's one of the reasons for the rule of capture. Rule of capture is universal. It's one of the oldest, most important rules in oil and gas law. And in the Continental case, specifically applied it to coal mine methane produced from an abandoned coal mine. Yes, one of the parts of the decision was this gas belongs to the coal owner, to the coal mine owner, not to the conventional oil and gas. Yeah, the right to me in preparing for the case, it almost seems like there are analogous underpinnings with the right of salvage in admiralty law. That the right of capture is recognizing an incentive that may exist and then rewarding the incentive, right, here to actually extract the gas. I think that is a part of it. If you look back into the history, I wouldn't compare it to admiralty law. I don't have any expertise in that. But it doesn't, that doesn't mean, at least in, it doesn't mean that there are no correlative rights. Because it seems like you all acknowledge that had you engaged in waste. That's correct. If we engage in waste, there are many correlative rights. You can't waste it. Okay. And he talked about unionization. Because of well spacing. So they'd have a right to recover. If you, if you, you're not going to, hypothetically, you deliberately wasted the asset. Depleted it. You just hypothesize. You depleted the mine of the gas. And you did it purposely so nobody could mine it. That would be damaging the reserve. In fact, there was a case, a Kentucky case where some. And they'd have a right of recovery, DTE. Yes. If we went into it. But we're not doing that. We're selling it. It's going into the pipeline. And thank you, Your Honor. You're welcome. Okay. Mr. Riddle, good morning to you. Good morning, Your Honor. Benjamin Riddle on behalf of, may it please the court. Benjamin Riddle on behalf of DTE. And I apologize for cutting into Mr. Ryan's argument. I don't have much else to offer you except for the fact I'm not sure it's clear on the briefs. That the Continental Resources versus Illinois Methane actually concerned this methane recovery project. The Orient 1 mine and the M1-2 well are part of a Corinth coal mine recovery project. The case between Continental Resources and Illinois Methane actually involved the same project that we're here about today. DTE is the successor in interest purchased from Illinois Methane the right to drill in these coal mines, or in these abandoned coal mines. Continental Resources is so on point that it actually involves the exact same coal mines. So I just want to make that point to the court. I'm not sure it was clear in the briefs. Thank you very much. Okay, very well. Okay, the case will be taken under advisement. Mr. Olingworth, I'm happy to give you one minute worth of points you want to make or your time had expired. But if you have a thought on your mind, we're happy to hear it. Okay, the case is taken under advisement.